IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|   |   |
|---|---|
| **NATIONWIDE MUTUAL INSURANCE COMPANY,** | * * * * |
| Plaintiff/ Counter-Defendant, | * * |
| v. | Civ. No.: MJM-22-1637 |
| **GENNESIS GLAZING CONSTRUCTION, LLC, et al.,** | * * * * |
| Defendants/ Counterclaimants. | * * |

\* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

This matter is before the Court on motions for summary judgment by Luis Fernando Bejarano-Salces, Sergio Vargas Garvizu, Omar Montenegro-Gamarra, and Yesid Erik Rojas Jiminez (collectively, "Individual Defendants"); and Nationwide Mutual Insurance Company ("Nationwide" or "Plaintiff"). For the reasons set forth below, the Court shall deny Plaintiff's motion (ECF 51) and grant Individual Defendants' motion (ECF 49).

### I. BACKGROUND

#### A. The Incident and Underlying Litigation

The Court finds no genuine dispute as to the following facts:

Gennesis Glazing Construction, LLC ("Gennesis") is a limited liability company with its principal place of business in the State of Maryland. At all relevant times, Elder Chinchilla was the owner of Gennesis. Chinchilla Aff. (ECF 49-2) ¶ 2. On or about November 2, 2020, Luis Bejarano-Salces contracted to work for Gennesis to install windows at a facility in Rehoboth

Beach, Delaware. Bejarano Aff. (ECF 49-5) ¶¶ 3, 5. As a part of Mr. Bejarano's employment responsibilities, Chinchilla tasked him with driving his co-workers Sergio Vargas Garvizu, Omar Montenegro-Gamarra, and Yesid Erik Rojas Jiminez to and from the Delaware job site because they did not have their own means of transportation. Bejarano Aff. ¶ 7; Chinchilla Aff. ¶ 8. In addition to an hourly wage of $21.00 to install windows, Bejarano was provided $100.00 per diem to transport his co-workers. Bejarano Tr. (ECF 49-4) at 22:20–24:15. Chinchilla Aff. ¶ 9. The $100 was a stipend to cover gas expenses for the transportation Bejarano provided his co-workers. Bejarano Aff. ¶ 8. Each week, Bejarano was required to use his personal vehicle to transport Vargas, Montenegro-Gamarra, and Rojas from the Washington, D.C. area to Delaware on Monday mornings and drop them back off in the D.C. area on Friday evenings. Bejarano Aff. ¶ 9. Chinchilla Aff. ¶ 16. Before accepting the job with Gennesis, Bejarano had no experience as a window installer. Bejarano Tr. at 19:10. Had Bejarano not agreed to transport his co-workers to work, Gennesis would not have hired him to serve as a window installer. Bejarano Tr. at 28:14-29-9, 43:13-19, Chinchilla Aff. ¶ 15.

On Friday, November 6, 2020, at approximately 4:24 p.m., Bejarano was involved in an auto collision while driving his co-workers home (the "Incident"). Bejarano Aff. ¶ 12. Individual Defs. Ex. 7 (Uniform Collision Report, ECF 49-8). Garvizu, Montenegro-Gamarra, and Rojas (collectively, "Tort Plaintiffs") allege injuries arising from the Incident. On October 13, 2021, Tort Plaintiffs filed a tort action in the Circuit Court of Fairfax County, Virginia alleging negligence against Bejarano and vicarious lability against Gennesis. Individual Defs. Ex. 9 (State Court Complaint, ECF 49-10). The state case is currently in non-suit status. ECF 30 at 2.

**B. Relevant Insurance Policy Provisions**

Nationwide issued a Commercial Auto Liability Policy (the "Policy") to Gennesis with a policy period of February 7, 2020, to February 7, 2021. Compl. Ex. 1 (Policy, ECF 1-1) at 13. The Policy contains a Business Auto Coverage Form detailing what autos are covered by the Policy. Policy at 33–34. The vehicle Bejarano was driving at the time of the Incident is a covered auto. Pl. Mot. (ECF 51) at 3–4; Individual Defs. Statement of Facts (ECF 49-1) at 10. The Policy provides that an "employee" of Gennesis is an "insured" while using a covered "auto" Gennesis does not own, hire, or borrow, "in [Gennesis's] business or . . . personal affairs." *Id.* at 60. Thus, Bejarano is an insured only if he was using his personal car in Gennesis's business or personal affairs at the time of the Incident. Pl. Mot. at 4; Individual Defs. Statement of Facts at 10.

The Policy contains certain exclusions relevant to the case. Policy at 35–37. The Workers' Compensation provision excludes any obligation for which Gennesis or its insurer "may be held liable under any workers' compensation, disability benefits or unemployment compensation law or any similar law." *Id.* at 35. The Employee Indemnification and Employer's Liability provision excludes "[b]odily injury" to an "employee" "arising out of and in the course of . . . [e]mployment by [Gennesis]" or "[p]erforming the duties related to the conduct of [Gennesis's] business[.]" *Id*. The Fellow Employee provision excludes from coverage bodily injury to "[a]ny fellow 'employee' of the 'insured' arising out of and in the course of the fellow 'employee's' employment or while performing duties related to the conduct of [Gennesis's] business[.]" *Id*. at 36. "Employee" is defined to include "leased workers" but does not include "temporary worker[s.]" *Id*. at 42.

C. **Procedural Background**

On July 2, 2022, Nationwide filed the Complaint in this action against Gennesis and Individual Defendants seeking a declaratory judgment that it has no obligation to defend or indemnify Bejarano for the tort claims in the underlying state litigation arising from the Incident.

3

ECF 1. On September 29, 2022, the Individual Defendants filed an Answer and Counterclaims seeking a declaratory judgment that Nationwide has a duty to defend and indemnify Gennesis and Bejarano for tort liability arising from the Incident. ECF 7. Because Gennesis never responded to the Complaint, default was entered against it on June 9, 2023. ECF 15. On April 5, 2024, Nationwide and Individual Defendants each filed a motion for summary judgment. ECF 49 (Individual Defs. Mot.); ECF 51 (Pl. Mot.). On April 19, 2024, each of these parties responded in opposition to the opposing party's motion. ECF 53 (Individual Defs. Opp'n); ECF 54 (Pl. Opp'n). On May 2, 2024, Nationwide filed a reply in support of its motion. ECF 55. On May 3, 2024, Individual Defendants filed a reply in support of their summary judgment motion, ECF 56, with a motion for leave to file the reply in excess of the page limit, ECF 57.[1]

## II. STANDARD OF REVIEW

### A. Motion for Summary Judgment

A court may grant a party's summary judgment motion under Rule 56 if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Cybernet, LLC v. David*, 954 F.3d 162, 168 (4th Cir. 2020). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis removed).

A fact is "material" if it "might affect the outcome of the suit under the governing law[,]" and a genuine issue as to material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248; *see also Raynor v. Pugh*, 817 F.3d 123, 130

---

[1] Individual Defendants' motion for leave to file excess pages is unopposed and will be granted.

(4th Cir. 2016). A party can establish the absence or presence of a genuinely disputed fact through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). The court must view all the facts, including reasonable inferences to be drawn from them, in the light most favorable to the nonmovant, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), but the court is not permitted to weigh the evidence, make credibility determinations, or decide the truth of disputed facts. *Anderson*, 477 U.S. at 249.

### III.   DISCUSSION

#### A.   Bejarano Is an "Insured" Under the Policy.

The primary issue presented in the parties' motions is whether, at the time of the Incident, Bejarano was, as Gennesis's employee, using his vehicle "in [Gennesis's] business . . . affairs" such that he is an insured under the Policy. *See* Pl. Mot. at 5–8; Def. Mem. (ECF 49-11) at 2. As explained below, the Court finds no genuine dispute of material fact that Bejarano was acting in the scope of his employment with Gennesis at the time of the Incident and, therefore, is an insured.

##### 1.   Choice of Law

The interpretation of the Policy is governed by Maryland law. *Wells v. Liddy*, 186 F.3d 505 (4th Cir. 1999) ("a federal court sitting in diversity must apply the choice-of-law rules from the forum state"); *Rouse Co. v. Fed. Ins. Co.*, 991 F. Supp. 460, 462 (D. Md. 1998) ("The absence of a forum selection clause in the policy requires the Court to follow Maryland's general rule of lex loci contractus by looking to the law of the place where the contract was made to determine its meaning and operation."). The Policy was made in Maryland.

5

Maryland courts would likely find that the question of whether Bejarano was using his vehicle "in [Gennesis's] business" at the time of the Incident depends upon whether his use of the vehicle within the course or scope of his employment with Gennesis. *See O'Shea v. Welch*, 101 F. App'x 800, 805 (10th Cir. 2004) ("We believe the Kansas Supreme Court would find 'in your business' to be unambiguous and interpret it to mean 'scope of employment.'"); *Wausau Underwriters Ins. Co. v. Baillie*, 281 F. Supp. 2d 1307, 1316 (M.D. Fla. 2002), *aff'd sub nom. Wausau Underwriters Ins. v. Baillie*, 82 F. App'x 218 (11th Cir. 2003) (holding, under Florida law, provision that "[a]ny employee of yours is an 'insured' while using in your business or your personal affairs a covered 'auto' you don't own, hire or borrow" "protects employees acting within the scope of their employment while using a vehicle not owned by [insured employer]"); *Nationwide Mut. Ins. Co. v. Gretchen Courtney & Assocs., Ltd.*, No. 12 C 5708, 2013 WL 3790912, at *15 (N.D. Ill. July 19, 2013) ("In Illinois, the phrase 'in your business or your personal affairs' in the context of an insurance policy that provides coverage for the insurer's employees, has been interpreted to protect employees who are injured while acting in the scope of their employment.") (cleaned up).

Courts have looked to the applicable law governing respondeat superior or vicarious liability in deciding whether an employee's actions are within the scope of her or his employment or in the employer's business. *See Harleysville Mut. Ins. Co. v. MacDonald*, No. CV 1:03-2265, 2005 WL 8159382, at *3–4 (S.D.W. Va. Mar. 31, 2005) (determining that "tort liability issues will be decided under West Virginia law" because the underlying accident occurred in West Virginia, and citing West Virginia cases on the doctrine of respondeat superior and the "going and coming" rule); *Wausau*, 281 F. Supp. 2d at 1316 n.10 (citing *S. Life & Health Ins. Co. v. Smith*, 218 So. 2d 784 (Fla. Dist. Ct. App. 1969)); *Price v. Colony Ins. Co.*, 520 So. 2d 964 (La. Ct. App.), *writ*

*denied*, 522 So. 2d 561 (La. 1987) (citing *St. Paul Fire & Marine Ins. Co. v. Roberts*, 331 So. 2d 529 (La. Ct. App. 1976)). "Vicarious liability is an issue of substantive tort law[.]" *Knowledge Boost, LLC v. SLC California, LLC*, Civ. No. WDQ-09-0936, 2009 WL 3379269, at *4, n.8 (D. Md. Oct. 16, 2009).

"For tort claims, Maryland adheres to the First Restatement of Conflict of Laws rule, *lex loci delicti commissi*, or the law of the place of harm, to determine the applicable substantive law." *Wells*, 186 F.3d at 521 (citing *Naughton v. Bankier*, 691 A.2d 712, 716 (Md. Ct. Spec. App. 1997)). Thus, Maryland choice-of-law rules call for application of the law of "the state where the last event necessary to make an actor liable for an alleged tort takes place." *Id.*; *see also Erie Ins. Exch. v. Heffernan*, 925 A.2d 636 (Md. 2007) ("The rule of lex loci delicti is well established in Maryland.").

Because the Incident at issue here occurred in Delaware, the Court will apply Delaware substantive law to the question of whether Bejarano acted within the course of scope of his employment at the time of the Incident.

### 2. Scope of Employment

Under Delaware law, an employee's conduct is "within the scope of employment, if, but only if . . . (a) [i]t is of a kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; and (c) it is actuated, at least in part, by a purpose to serve the master[.]" *Coates v. Murphy*, 270 A.2d 527, 528 (Del. 1970) (quoting Restatement 2d, Agency 2d, sec. 228). An employee's conduct "is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or [t]oo little actuated by a purpose to serve the master." *Id.* (quoting Restatement 2d, Agency 2d, sec. 228). An employee is regarded as acting "outside the scope of his employment" when "going to or returning from his

place of employment[.]" *Short v. United States*, 245 F. Supp. 591, 593 (D. Del. 1965), *cited in Fitzpatrick v. United States*, 754 F. Supp. 1023, 1035 (D. Del. 1991). This "going and coming" rule "generally relieves an employer from liability for the torts of an employee when the employee is going to or returning from his place of employment." *Id*. However, Delaware law also recognizes the "dual purpose" rule, which holds an employer liable for an employee's tortious acts while "combining his own business with that of his master, or attending to both at substantially the same time[.]" *Wilson v. Joma, Inc*., 537 A.2d 187, 189 (Del. 1988) (quoting *Ryan v. Farrell*, 280 P. 945 (1929)). From this rule, "it follows that conduct of an employee, although done in part to serve the purposes of the servant or a third person, may be within the scope of employment if the employer's business actuates the employee to any appreciable extent." *Id*. (citation omitted). Delaware courts have also recognized that the "going and coming" rule "does not apply if the making of that journey is in itself a substantial part of the service for which the worker is employed." *Cook v. A.H. Davis & Son, Inc*., 567 A.2d 29, 32 (Del. Super. Ct. 1989).

There is no genuine dispute that Bejarano acted within the scope of his employment at the time of the Incident. First, Bejarano was performing a task he was employed to perform at the time of the Incident. Bejarano's responsibility for driving his co-workers to and from the Delaware job site and from Delaware to the D.C. area was an express duty and condition of his employment. Bejarano Aff. ¶ 7. Chinchilla Aff. ¶ 8, 15. Bejarano reached an oral agreement with Gennesis to transport his co-workers, and, had he refused this duty, he would not have been hired as a window installer. Bejarano Tr. at 28:14-29-9, 43:13-19; Chinchilla Aff. ¶ 8. Second, the Incident occurred substantially within time and space limits authorized by Gennesis. Bejarano's job was to drive his co-workers home at the end of the workweek, and he was engaged in this task on a route between Delaware and D.C. at the end of the workweek. Bejarano Aff. ¶¶ 9, 12. Finally, Bejarano's purpose

8

for driving his co-workers home was to serve Gennesis by performing a task Gennesis required him to do. Nationwide cites no record evidence to dispute any of these findings. Accordingly, the Court finds that no reasonable juror could conclude, based on the record evidence, that Bejarano was acting outside the scope of his employment at the time of the Incident.

Even if, in driving his co-workers back to the D.C. area at the end of the workweek, Bejarano was also attending to his own interests in returning home, his personal business was combined with Gennesis's requirement that he transport its other employees home. Thus, under the dual-purpose rule, Bejarano's conduct was not beyond the scope of his employment.

### B. The Fellow Employee Exclusion Does Not Exclude Tort Plaintiffs' Injuries from Coverage.

Nationwide argues that coverage for the Incident is excluded under the Policy's Fellow Employee provision. Pl. Mot at 8; Pl. Opp'n at 6–7. This exclusion applies only to injuries sustained by a "fellow" employee "arising out of and in the course of [that employee's] employment or while performing duties related to the conduct of [Gennesis's] business." Policy at 36. Courts in other jurisdictions have interpreted similar provisions as applicable when both the "insured" employee and the "fellow" employee were in the course and scope of their employment when the injury occurred. *See Empire Fire & Marine Ins. Co. v. Floyd*, 631 F. App'x 686, 689 (11th Cir. 2015) ("Florida courts interpreting a similar term to 'fellow employee'—'cross employee'—have determined that the applicability of the exclusion depends on whether both employees were in the course and scope of their employment when the tort occurred.") (citations omitted); *Dahm v. Emps. Mut. Liab. Ins. Co. of Wisconsin*, 246 N.W.2d 131, 135 (Wis. 1976) ("The purpose of a fellow employee exclusion clause . . . is to leave an employee, who is injured by an employer's motor vehicle being operated by a fellow employee while both are in the course of their employment, to his remedy under workmen's compensation law or to an action against his

9

fellow employee."); *Greathead v. Asplundh Tree Expert Co.*, 473 So. 2d 1380, 1384 (Fla. Dist. Ct. App. 1985) ("As to . . . a 'co-employee' or 'cross-employee' exclusion, the case law is clear that coverage of the co-employee will be excluded where (1) the co-employee is an insured under the policy, and (2) both the employee and the co-employee were acting within the course and scope of their employment at the time of the injury.") (citations omitted); *Empire Fire & Marine Ins. Co. v. Dust*, 932 S.W.2d 416, 418 (Mo. Ct. App. 1996) ("Under the fellow employee exclusion there is no coverage for John Dust because he and Fisher were the employees of the same employer . . . and both were engaged in the course of their employment.").

Here, the Fellow Employee exclusion does not apply to Tort Plaintiffs' injuries because, at the time of the Incident, they were not working for Gennesis, and their injuries did not "aris[e] out of or in the course of [their] employment . . . ." Policy at 36. While Bejarano was performing a work duty by driving Tort Plaintiffs home, Tort Plaintiffs were not themselves performing any work duties. At the time of the Incident, Vargas and Rojas were asleep in the back of the vehicle, and Montenegro-Gamarra was on the phone in the front passenger seat. Vargas Aff. ¶ 7; Rojas Aff. ¶ 7; Chinchilla Aff. ¶ 17. Tort Plaintiffs' work duties had ended, and they were away from the job site, on their way home, and therefore not within the course of their employment with Gennesis. *See Short*, 245 F. Supp. at 593 ("[The 'going and coming' rule] relieves the employer from liability for the employee's torts for the employee is regarded as being outside the scope of his employment.") (emphasis added).

Nationwide next argues that, if Bejarano was acting in the scope of his employment in driving Tort Plaintiffs home, then Tort Plaintiffs were still on duty at the time pursuant to the "free transportation" exception to the "going and coming" rule. Pl. Mot. at 8. Maryland law recognizes an exception to the "going and coming" rule "where the employer furnishes the employee free

transportation to and from work[.]" *Alitalia Linee Aeree Italiane v. Tornillo*, 617 A.2d 572, 574 (Md. 1993) (citations omitted). In this circumstance, "the employee is deemed to be on duty, and an injury sustained by the employee during such transportation arises out of and in the course of employment." *Id*. (citations omitted). However, under Maryland law, this "free transportation" exception only applies "if, under the terms of the employment, the employer is under some obligation to provide the transportation to the employee. It is that underlying obligation which brings the travel within the scope of the employment." *Carter v. M. V. Const. Corp*., 422 A.2d 44, 48 (Md. Ct. Spec. App. 1980) (quoting *Ryan v. Kasaskeris*, 381 A.2d 294, 300 (Md. Ct. Spec. App. 1977)); *see also Baltimore Cnty. v. Morrison*, No. 1242, Sept. Term, 2016, 2017 WL 4117879, at *8 (Md. Ct. Spec. App. Sept. 15, 2017).

Any "free transportation" exception to the "going and coming" rule would not apply to the Incident here because no evidence has been presented to suggest that Gennesis was obligated to provide free transportation to Tort Plaintiffs by the terms of their employment. Gennesis's choice to offer free transportation for Tort Plaintiffs by employing Bejarano to perform this task does not amount to an obligation on Gennesis to provide Tort Plaintiffs with free transportation or a requirement on Tort Plaintiffs to travel with Bejarano.

### C. The Workers' Compensation and Employee Indemnification and Employer's Liability provisions Do Not Exclude Coverage.

Individual Defendants argue that the Policy's exclusions in its Workers' Compensation provision and Employee Indemnification and Employer's Liability provision do not apply to exclude coverage for the Incident. Individual Defs. Mem. at 25–34, 41–44.

The Workers' Compensation exclusion does not apply because Tort Plaintiffs were not working but were traveling home at the time of the Incident, and therefore the "going and coming" rule bars them from obtaining workers' compensation benefits under Maryland law. *See* Policy at

35 (excluding from coverage "[a]ny obligation for which the 'insured' or the 'insured's' insurer may be held liable under any workers' compensation, disability benefits or unemployment compensation law or any similar law"); *see also Bd. of Cnty. Comm'rs for Frederick Cnty. v. Vache*, 709 A.2d 155, 158 (Md. 1998) ("Generally speaking, injuries the employee incurs by going to or coming from work are not compensable under the [Maryland Workers' Compensation Act] because they do not arise out of and in the course of employment.").

And Maryland courts would likely find that the Policy's Employee Indemnification and Employer's Liability provision applies only to employees' claims against an employer "arising out of and in the course of . . . [e]mployment by [the insured employer]" or "[p]erforming the duties related to the conduct of the [insured employer's] business[.]" Policy at 35; *see also Atl. States Ins. Co. v. Ne. Networking Sys. Inc.*, 893 A.2d 741, 747 (Pa. Super. 2006) (holding that employee indemnification and employer's liability exclusion "would apply only if Appellee was bringing suit against [his employer] for the bodily injury arising out of and in the course of his employment[,]" which was "not a matter at issue" in a case against a co-employee). This exclusion would not apply to Tort Plaintiffs' claims against Bejarano because he is not Tort Plaintiffs' employer, and, because Tort Plaintiffs were not working at the time of the Incident, their claims do not arise out of their employment or the performance of work duties.

Nationwide does not offer any substantive response to Individual Defendants' arguments regarding the foregoing exclusions other than to state in a footnote, and without legal authority, that the exclusions are "no longer an issue before the Court" as a result of Gennesis's default. Pl. Opp'n at 4 n.2. The Court is not persuaded by Nationwide's footnote. Individual Defendants' counterclaim specifically seeks a declaratory judgment that Nationwide has a duty to defend and indemnify Gennesis *and Bejarano* for the liability arising from the Incident. ECF 7 at 12 (emphasis

added). The counterclaim specifically cites the Workers' Compensation and Employee Indemnification and Employer's Liability exclusions and alleges that these exclusions do not apply to Tort Plaintiffs' injuries. *Id.* at 9–10. Nationwide never moved to dismiss this portion of the counterclaim or otherwise contest Individual Defendants' right to seek the declaratory relief specified therein. Accordingly, the applicability of the exclusions is properly before the Court through the Individual Defendants' summary judgment motion. Nationwide's response is inadequate to contest Individual Defendants' evidence and argument that the exclusions do not apply. *See Horsetail Techs., LLC v. Delaware State Police Fed. Credit Union*, Civ. No. ELH-18-556, 2020 WL 3402302, at *20 (D. Md. June 19, 2020) ("Undeveloped and perfunctory arguments are deemed waived.") (citing *Belk, Inc. v. Meyer Corp.*, 679 F.3d 146, 152 n.4 (4th Cir. 2012), and other cases).

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment (ECF 51) will be DENIED, and Individual Defendants' Motion for Summary Judgment (ECF 49) will be GRANTED.

A separate Order will follow.

   1/20/25                                                         /S/
Date                                                         Matthew J. Maddox
                                                             United States District Judge